COMMONWEALTH vs. LAMPROS VENIOS.

Suffolk. February 7, 1979. — May 4, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Identification.*

Where a witness had been shown two arrays of photographs, one of about two dozen photographs and the other of about 150, by the police and, on the following day, was shown a single photograph of the defendant whom he identified immediately, the single-photo identification was not unnecessarily suggestive and therefore no taint attached to a subsequent in-court identification. [26-29]

Evidence at a criminal trial was sufficient to support the judge's finding that a witness's in-court identification of the defendant had a source independent of a pre-trial photographic identification. [30]

INDICTMENT found and returned in the Superior Court on April 7, 1977.

The case was tried before *St. Cyr*, J., a District Court judge sitting under statutory authority.

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*Kenneth H. Tatarian* for the defendant.

*Timothy P. O'Neill*, Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. We are to decide whether an in-court identification of the defendant should have been suppressed because a prior photographic identification was unnecessarily suggestive. The judge allowed the in-court identification, and the Appeals Court affirmed the defendant's conviction. *Commonwealth* v. *Bernard*, 6 Mass. App. Ct. 499 (1978). That court relied on *Manson* v. *Brathwaite*, 432 U.S. 98, 114 (1977), and *Neil* v. *Biggers*, 409 U.S. 188, 199 (1972), for the principle that the identifica-

tion could be permitted "so long as the court finds that in the totality of the circumstances the identification will be reliable." *Id.* at 503. We have left open the question whether we will follow such a "reliability test," and we allowed further appellate review to resolve that question. After argument it appears that the identification was properly allowed without regard to that question, and we therefore leave that question for another day.

The defendant, Lampros Venios, and a codefendant, Richard Bernard, were convicted of receiving stolen and embezzled property. Both convictions were affirmed, but the codefendant did not seek further appellate review. The case against the defendant rested almost entirely on the testimony of the thief, Michael Foxworth. The defendant moved before trial to suppress all out-of-court and in-court identifications of the defendant by Foxworth. After hearing the motion was denied. At trial Foxworth identified the defendant as the "money man" who paid him $1,500 for stolen jewelry worth more than $11,000. Thereafter the defendant elicited testimony of Foxworth's pretrial photographic identification in an attempt to undermine the credibility of his in-court identification.

The evidence is described in the opinion of the Appeals Court. We summarize briefly the judge's findings on the motion to suppress. Foxworth was a courier for a Boston jewelry firm, and on December 6, 1976, he absconded with the jewelry in question. On that day, after negotiating with Bernard for the sale of the jewelry, he and a friend went with Bernard to an office. After a wait, the "money man" arrived, inspected the jewelry, and gave $1,500 to Foxworth. The office was well lighted, and Foxworth had a clear and unobstructed view of the "money man" for about five minutes.

In January, 1977, Foxworth was arrested in Virginia and returned to Boston. During the trip he made a complete and detailed confession, and upon return he pointed out where the jewelry transaction had taken place. He

picked a photograph of Bernard out of a series of photographs and described the "money man" as about five feet nine, dark, well-built, with long hair and a mustache. Later he was asked if the name Venios meant anything to him; it did not. He was shown a second series of photographs, including two or three of people named Venios but not including the defendant; he selected some showing features similar to those of the "money man" but could not identify the "money man."

The next morning the police obtained a photograph of the defendant and took it to the Municipal Court of the City of Boston, where Foxworth was awaiting arraignment. Foxworth promptly and unequivocally identified the photograph as that of the "money man." Warrants were obtained for the defendant and Bernard, and the defendant was arrested in the room where Foxworth said the jewelry transaction had taken place.

Foxworth pleaded guilty to larceny and was sentenced to two years in a house of correction, but was told that the sentence would be revised if he cooperated with police. He refused to testify in a District Court proceeding against the defendant and Bernard. Later, in April, 1977, he testified before the grand jury; his sentence was then suspended and he was placed on probation.

The judge concluded that Foxworth's original observations of the defendant "were made under conditions so favorable to his identification as to cure any possible suggestion that may have been made either orally or by the presentation of the single photo" and that the in-court identification of the defendant was based solely on his memory of those observations. Further, the inducements offered to him were not so prejudicial as to warrant suppression of the identifications of the defendant or Bernard.

1. *Reliability.* We have followed *Stovall* v. *Denno*, 388 U.S. 293, 301-302 (1967), in passing on motions to suppress identification testimony. Under our decisions a criminal defendant has the burden to prove, by a prepon-

derance of the evidence, that the witness was subjected by the State to a pretrial confrontation, either photographic or in person, "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny the defendant due process of law. On a showing of such a confrontation, depending on "the totality of the circumstances surrounding it," evidence of the confrontation must be excluded at trial. Should the prosecution then desire to offer other identification testimony, it must show by "clear and convincing evidence" that the identification has a source independent of the suggestive confrontation. *Commonwealth* v. *Botelho,* 369 Mass. 860, 865-868 (1976), and cases cited.

In the *Botelho* case we took note of the possibility that evidence of a suggestive confrontation might be constitutionally permissible if the identification was "reliable," on the authority of *Neil* v. *Biggers,* 409 U.S. 188, 199 (1972). But we did not decide the point, since the Commonwealth had not argued it, there was serious doubt whether the *Biggers* rule applied to post-*Stovall* identifications, and there was a likelihood that the *Botelho* identification lacked reliability. 369 Mass. at 870-875. It is now clear that the *Biggers* rule applies to post-*Stovall* identifications. *Manson* v. *Brathwaite,* 432 U.S. 98, 114 (1977). The Appeals Court has followed *Manson* v. *Brathwaite* in *Commonwealth* v. *Gordon,* 6 Mass. App. Ct. 230, 235-236 (1978), as well as in the present case. We have cited and relied on both the *Biggers* case and the *Brathwaite* case. *Commonwealth* v. *Dougan,* 377 Mass. 303, 317-318 (1979). *Commonwealth* v. *Moynihan,* 376 Mass. 468, 476-477 (1978). *Commonwealth* v. *Nolin,* 373 Mass. 45, 51 (1977). *Commonwealth* v. *Chase,* 372 Mass. 736, 740-741 (1977). But we have several times left open the question whether we would follow the *Biggers-Brathwaite* rule so far as it would admit reliable identification evidence resulting from an unnecessarily suggestive confrontation. *Commonwealth* v. *Jackson,* 377 Mass. 319, 331 n.11 (1979). *Commonwealth* v. *Clifford,* 374 Mass. 293, 304 n.4

(1978). *Commonwealth* v. *Barnett*, 371 Mass. 87, 91 n.6 (1976), cert. denied, 429 U.S. 1049 (1977). *Commonwealth* v. *Walker*, 370 Mass. 548, 565 n.12, cert. denied, 429 U.S. 943 (1976).

In other States, there have been numerous decisions following the *Biggers-Brathwaite* rule. In a very few of those decisions there have been suggestions that State law might impose restrictions on identification evidence beyond the requirements of Federal constitutional law. See *State* v. *St. Onge*, 392 A.2d 47, 52 n.4 (Me. 1978), and *State* v. *Leclair*, 118 N.H. 214, 218-219 (1978), for suggestions that the court might exclude identification evidence, even though reliable, if the police persist in using defective confrontation procedures.

In *State* v. *Cefalo*, 396 A.2d 233, 236-240 (Me. 1979), the court carefully reviewed the subject, pointing out the difference between the interest in "preventing the admission of unreliable identification testimony that may lead to the conviction of the innocent" and the interest in "having law enforcement agencies employ fair identification procedures that exist independently of the reliability of the particular identification." Following the *Biggers-Brathwaite* rule, the court supplemented it with State rules on burden of proof and standards of appellate review. Those rules and standards were based in part on our discussion in the *Botelho* case, and they are in large part similar to the rules and standards we have followed.

As will appear, the present case is not an appropriate occasion for decision of the question whether we will follow the *Biggers-Brathwaite* "reliability test." If we do decide in an appropriate case to follow that test, we will give careful consideration to the rules on burden of proof and the standards of appellate review laid down in the *Cefalo* case. Meanwhile, judges who must make findings with respect to challenged identification procedures should direct their attention to the issues framed by our prior cases as well as to the "reliability test."

2. *The photographic identification.* Like most other courts, we have often disapproved one-on-one confrontations, whether photographic or in person, but "there is no per se rule of exclusion where a single photograph is shown." *Commonwealth* v. *Jackson*, 377 Mass. 319, 332 (1979), and cases cited. The burden was on the defendant to prove by a preponderance of the evidence that the photographic identification was unnecessarily suggestive. The judge made no such finding, and in deciding whether such a finding was required as a matter of law by his subsidiary findings we consider "the entire circumstances of the identification procedure." *Commonwealth* v. *Nolin*, 373 Mass. 45, 51 (1977). See *Commonwealth* v. *Botelho*, 369 Mass. 860, 867 (1976).

Here no suspect was in custody at the time of the photographic identification; indeed, there apparently was no suspect, much less a suggestion that the police were exhibiting a picture of a leading suspect. The witness had given the police a detailed description of the "money man." He had seen two arrays of photographs the day before, one of about two dozen photographs and the other of about 150, and had indicated that he had a definite image in his mind. The showing of one more photograph the next morning "was to some extent a continuation of an ongoing process of looking through police photos." *Nassar* v. *Vinzant*, 519 F.2d 798, 801 (1st Cir.), cert. denied, 423 U.S. 898 (1975). See *United States ex rel. Frasier* v. *Henderson*, 464 F.2d 260, 265 (2d Cir. 1972); *Cooper* v. *Picard*, 428 F.2d 1351, 1352 (1st Cir. 1970); *McClain* v. *State*, 247 Ark. 33, 37-38 (1969).

We conclude that it was not shown that the single-photo identification was unnecessarily suggestive. No question is before us as to the admissibility of evidence of the pretrial identification, since that evidence was introduced by the defendant rather than by the Commonwealth. But since the pretrial identification was not shown to be unnecessarily suggestive, no taint attached to the subsequent in-court identification. *Commonwealth* v. *Clifford*, 374 Mass. 293, 304 (1978), and cases cited.

3. *The in-court identification.* Even if the pretrial identification were unnecessarily suggestive, the subsequent identification at trial would be excluded "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States,* 390 U.S. 377, 384 (1968). *Commonwealth* v. *Murphy,* 362 Mass. 542, 544 (1972). The prosecution would then have the burden of establishing by "clear and convincing evidence" that the in-court identification had a source independent of the suggestive confrontation. *Commonwealth* v. *Jackson,* 377 Mass. 319, 331 (1979). *Commonwealth* v. *Botelho,* 369 Mass. 860, 868 (1976). We read the judge's finding that this in-court identification was based solely on the witness's memory of his original observations of the defendant as a finding that the in-court identification had a source independent of the photographic identification. It is clear that the judge thought the evidence to this effect was clear and convincing, and we agree. Since the "independent source" standard is met, and since that standard is at least as strict as the *Biggers-Brathwaite* standard applied by the Appeals Court, we need not consider the latter standard further.

*Judgment of the Superior*
*Court affirmed.*