## COMMONWEALTH *vs.* RONALD BONNOYER.

No. 87-458.

Hampden.    June 11, 1987. — March 3, 1988.

Present: ARMSTRONG, PERRETTA, & FINE, JJ.

*Identification. Due Process of Law,* Identification. *Evidence,* Identification, Photograph. *Practice, Criminal,* Conduct of government agents.

At the hearing on a motion to suppress an anticipated in-court identification of the defendant by an eyewitness as one of two armed and masked men who robbed a bank, there was sufficient evidence to warrant the judge's findings that the witness's ability to identify the defendant was not the product of her observations at the scene of the crime but rather of the dispelling of her doubt by a police officer's telling her that a second man had confessed his part in the crime and named the defendant as his accomplice and by her familiarity with the defendant through later confrontations in court proceedings; consequently, under the judge's findings, the anticipated in-court identification had no source independent of the unnecessary and improper suggestion by the police officer and was unreliable. [447-448]

At the hearing on a motion to suppress an eyewitness's initial identification, from a photographic array, of the defendant as one of two armed and masked men who robbed a bank, which procedure was found by the judge to have been free of any taint of suggestiveness, the judge, in the interest of fairness, acted within his discretion in excluding as substantive evidence the photographic identification in order to counteract prejudice to the defendant caused by a police officer's subsequent statements to the witness as to a second man's confession and implication of the defendant as his accomplice, where the witness's initial identification was unreliable; where her ability to identify the defendant in court would be the product not of her observations at the time of the robbery but of the confirmatory evidence of the second man's confession; where the confession, insofar as it implicated the defendant, was not self-evidently reliable; where the confession would not be admissible (unless the second man testified); and where the witness learned of the confession only after expressing her doubts as to the correctness of her identification. [448-452]

INDICTMENT found and returned in the Superior Court Department on June 14, 1983.

A motion to suppress evidence was heard by *John F. Moriarty, J.*

*Ariane D. Vuono,* Assistant District Attorney, for the Commonwealth.

*Janice A. Healy* for the defendant.

ARMSTRONG, J. This is an appeal by the Commonwealth under G. L. c. 278, § 28E, from a pretrial order allowing a motion by the defendant (Bonnoyer) to suppress certain in-court and out-of-court identifications of Bonnoyer as one of two armed and masked men who robbed a bank in Springfield on April 2, 1983. The identifications are those by one Cynthia Haber, who was an eyewitness and whose original identification of the defendant, from a photographic array, was found by the judge to have been free at the time of any taint of suggestiveness.

Haber and her sister drove to the bank around noontime to do an errand. Her sister pointed out two men in sweat jackets, one red and one white, who were standing next to a van also parked in front of the bank. Haber recognized neither man at that point. She went into the bank (her sister remained at the wheel) and was next in line for a teller when she heard a male voice order the teller not to press the alarm button and to hand over the money. To her right were the two men in sweat jackets. Their hoods were now pulled up, and they wore nylon masks. The man in the white sweat jacket, holding a gun, told the other to get the money from the teller and then went to another part of the bank to approach another employee. Haber recognized his voice as that of a person who had been introduced to her by her boy friend. She looked at the second man — the one in the red sweat jacket — and observed that he had a large nose and light brown hair. The nylon mask made it impossible to see his eyes, and she did not recognize him as anyone she had seen before. He took the money from the teller and left the bank ahead of the other robber. He had said nothing in the course of the robbery.

When the police arrived, Haber told the officer in charge of the investigation, Captain Ernest Stelzer, that she had recognized the voice of the robber in white but could not recall his name. At Stelzer's request, she phoned her boy friend and from him learned that the man's name was William Jensen and that Jensen lived in West Springfield. Stelzer then talked with Haber's sister, who from her vantage in the car outside the bank had seen the two men from the van enter and leave the bank. Before entering, while their faces were turned towards her, they had pulled on their nylon masks. One had pointed a gun at her.

The two women went back to the Springfield police station with Captain Stelzer. He obtained a mug shot of William Jensen from the police files. He also called the West Springfield police, who gave him the names of several persons with whom Jensen had been "hanging around." One of these was Bonnoyer, who was Jensen's brother-in-law. The West Springfield police sent along a mug shot of Bonnoyer. Stelzer assembled an array of nine black and white mug shots, including those of Jensen and Bonnoyer. All showed white males in their late teens to mid-twenties. Haber and her sister viewed the array separately.

Haber picked out the Jensen mug shot immediately as that of the robber whose voice she had recognized, the one who wore the white sweat jacket. Captain Stelzer, according to the judge's findings, "then told her [Haber] to take her time and look again at all the remaining photos to see if she recognized any of them. He made no suggestion to her, but she nevertheless felt she was under some pressure (to use her own term) to make a second identification. She was very nervous and anxious to conclude the procedure and go home. After several minutes of hesitation she selected the photograph of Ronald Bonnoyer as that of the second robber." Haber then learned Bonnoyer's name from Stelzer. Haber's sister, viewing the same array, identified Jensen but not Bonnoyer. A third person had also viewed the two robbers outside the bank. That person identified both Jensen and Bonnoyer from the same array, but the third witness has since died.

Bonnoyer was arrested the same day. Nearly a month passed before the apprehension of Jensen. At that time there was some sort of court proceeding which Haber was asked to attend. There she saw Captain Stelzer and expressed doubts about her earlier identification of Bonnoyer as the second robber. Stelzer told her not to worry, that Jensen had confessed his part in the crime and named Bonnoyer as his accomplice. The judge found that Stelzer, by this statement, did not intend "to influence [Haber's] testimony. He was more probably simply attempting to alleviate the young woman's apparent anxiety." However well meaning, the "statement by Stelzer served to allay whatever fear [Haber] had as to the accuracy of her identification. She became convinced at that moment, and I believe remains convinced to this day, that Bonnoyer had in fact been the second robber."

Since that time, the judge found, Haber has seen Bonnoyer at several court appearances, during which he was isolated and identified by name.[1] Haber is now able to identify Bonnoyer readily, but that ability, the judge found, is the product not of her observations before she entered the bank (where she saw the men but took no particular note of their faces) or during the robbery (where Bonnoyer's facial features were effectively concealed) but rather of the dispelling of her doubt by Stelzer's affirmation, on Jensen's authority, that Bonnoyer was the second robber and her familiarity with Bonnoyer's features through later confrontations.

The judge's findings concerning the source of Haber's present ability to identify Bonnoyer and the unreliability thereof are supported by the evidence and are binding on this court. *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980). *Commonwealth* v. *Melvin*, 399 Mass. 201, 204 (1987). *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, 462 (1986). On the basis of these findings, the judge excluded Haber's antici-

---

[1] The Commonwealth challenges the form of the judge's finding but acknowledges evidence that Haber has seen Bonnoyer on two occasions since the photographic identification: once in court and once on a bus. The Commonwealth does not dispute the judge's principal point: that Haber is now able to recognize Bonnoyer readily.

pated in-court identification of Bonnoyer as the product of Stelzer's unfortunate suggestion and as unreliable. This ruling is a correct application to the facts found of now familiar principles stated in such cases as *Commonwealth* v. *Botelho*, 369 Mass. 860 (1976), *Commonwealth* v. *Venios*, 378 Mass. 24 (1979), *Commonwealth* v. *Gordon*, 6 Mass. App. Ct. 230 (1978), *Commonwealth* v. *Hicks*, 17 Mass. App. Ct. 574 (1984), and opinions of the United States Supreme Court on which those decisions were based. Under the judge's findings, the anticipated in-court identification has no source independent of the unnecessary and improper suggestion by the police.

The more difficult question concerns the exclusion of the photographic identification, which, on the judge's findings, was unreliable [2] but was not for that reason alone inadmissible as substantive evidence [3] against the defendant, not having been the product of suggestion by the police. See *Commonwealth* v. *Wheeler*, 3 Mass. App. Ct. 387, 392 (1975); *Commonwealth* v. *Gordon*, 6 Mass. App. Ct. at 237; *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. at 469. The judge's reason for excluding the photographic identification was different: namely, that Haber could not be cross-examined effectively about her doubts concerning the accuracy of the photographic identification because those doubts no longer existed, and she could not be

---

[2] In terms of the factors normally relied on to determine reliability, (1) Haber had a poor opportunity to view the robber's features after her attention was drawn to him (compare *Commonwealth* v. *Gordon*, 6 Mass. App. Ct. at 236); (2) there was no evidence that she gave the police other than a very general description (red sweat jacket, light hair color, perhaps a large nose) (compare *Gordon* at 232); (3) she hesitated a long time before selecting the Bonnoyer photo from a relatively small array (compare *Gordon* at 238); and (4) whether justifiably or not, she perceived pressure to select a second photograph (compare *Gordon* at 239).

[3] As the judge observed, an out-of-court identification may theoretically be admissible (1) for corroboration, (2) for impeachment, or (3) as substantive evidence that the identified person committed the crime charged. See *Commonwealth* v. *Swenson*, 368 Mass. 268, 272 (1975); *Commonwealth* v. *Weichell*, 390 Mass. 62, 71-72 (1983); *Commonwealth* v. *Daye*, 393 Mass. 55, 60 (1984). Here, however, the photographic identification by Haber would be admissible only for the third purpose because the ruling discussed earlier in the text meant that there would be no in-court identification to corroborate and no in-court repudiation to impeach.

effectively cross-examined as to the earlier doubts without bringing out the otherwise inadmissible and (to Bonnoyer) ruinous evidence that Jensen had identified Bonnoyer as his accomplice. To the jury it could appear that Haber's photographic identification, thus insulated from fully effective challenge, was reliable independent evidence of Bonnoyer's complicity, where in truth it had been fraught with doubt and uncertainty.

The judge's concern about the fairness of admitting the photographic identification in these circumstances was not without constitutional overtones. Bonnoyer's right to confront the witnesses against him might be preserved technically by the fact that Haber would be a witness at the trial and thus be available for cross-examination. Compare *Commonwealth* v. *Torres*, 367 Mass. 737, 739-740 n.2 (1975); *Commonwealth* v. *Swenson*, 368 Mass. 268, 272-273 n.3 (1975). The judge focussed instead on the practicalities of the situation: that Bonnoyer's full exercise of that right would be significantly compromised by Haber's present certainty that her identification had not been in error, and cross-examination that risked opening up the source of that certainty could be massively counter-productive.

Underlying the judge's reasoning, presumably, was an assumption that Jensen would not be a witness for the Commonwealth or, if produced, would deny the fact of his confession. We are not advised to the contrary and make the same assumption.[4] In these circumstances, the Jensen confession would not be independently available to the Commonwealth as evidence against Bonnoyer. See *Douglas* v. *Alabama*, 380 U.S. 415 (1965); *Bruton* v. *United States*, 391 U.S. 123 (1968).

The dilemma faced by the defendant was one of the Commonwealth's making. While we find no precedent precisely in point, we do not doubt that the trial judge, in the interest of

---

[4] If the assumption should prove false, the judge would doubtless reconsider and reverse so much of his order as excluded the photographic identification, because Bonnoyer's ability to cross-examine Haber effectively would not risk bringing out damaging information that would not otherwise be brought to the jury's attention.

fairness, had discretion to counteract the prejudice to the defendant in a reasonable manner. For the Commonwealth he could (and did) take into account that Captain Stelzer's impropriety was well-intentioned; for the defendant he could take into account that the out-of-court identification was intrinsically shaky (see note 2, *supra*) and that the tendency of the Commonwealth's impropriety would be to make the identification seem more probative than it really was. Analogy is invited to cases decided under Mass.R.Crim.P. 14(c)(1), 378 Mass. 880 (1979), such as *Commonwealth* v. *Lam Hue To*, 391 Mass. 301 (1984), where the judge dismissed a murder indictment because the Commonwealth had concealed its knowledge and possession of a knife, found at the scene of a murder, that might have been the murder weapon until after the defendant had set his trial strategy and delivered his opening,[5] and *Commonwealth* v. *Gliniewicz*, 398 Mass. 744 (1986), where the defendants' boots were tested affirmatively for minute traces of blood in a manner that destroyed the boots so the defendants could not arrange for confirmatory tests or otherwise effectively rebut the damaging evidence. Retrials were ordered in *Gliniewicz*, at which the Commonwealth could not use the results of the blood tests. *Id.* at 749, 751.

The Commonwealth, convinced of Bonnoyer's guilt, views as disproportionate a remedy that may enable him to escape prosecution. There is no certainty, however, that he was in fact the second robber, as there sometimes is when a perpetrator is apprehended at the scene, or is known to an eyewitness, or is found shortly thereafter with identifiable stolen articles. It does not threaten the integrity of the truth-finding process to force the prosecution to rely (to the extent that it can) on what so far as now appears is the only genuinely solid evidence that

---

[5] The case was remanded for further hearings and findings on the question whether the harm was so irremediable as to warrant dismissal as opposed to a mistrial only. 391 Mass. at 314. Contrast *Commonwealth* v. *Manning,* 373 Mass. 438 (1977), in which an indictment was ordered dismissed altogether, regardless whether the prejudice was otherwise remediable, where F.B.I. agents had attempted wilfully to drive a wedge between the defendant and his counsel by improper, direct contacts with the defendant.

it has implicating Bonnoyer: namely, the testimony of Jensen, the confessed robber.[6]

In affirming the judge's ruling as a proper exercise of his discretion, we stress the unique configuration of facts this case presents. Surely there will be many instances in which a witness to a crime will identify a perpetrator and then learn of facts confirming the correctness of his identification: that the person he had identified has confessed, for example, or has been found in possession of loot or a distinctive weapon, or has been independently identified by another witness.[7] No problem of admissibility will arise, either under the independent source test of *Commonwealth* v. *Botelho*, 369 Mass. at 866, or the reliability test of *Neil* v. *Biggers*, 409 U.S. 188 (1972), so long as the initial identification and its later repetitions are found to be based on the witness's observations at the scene of the crime. See *Commonwealth* v. *Wheeler*, 3 Mass. App. Ct. at 392. The factors which make this case distinctive are that Haber's initial identification was unreliable; her ability to identify Bonnoyer now is the product not of her observations at the time of the robbery but of the confirmatory evidence of an accomplice's confession; the confession, insofar as it implicates Bonnoyer, is not self-evidently reliable; it will not be admissible (unless Jensen testifies); Haber learned of it only after expressing her doubts as to the correctness of her identifi-

---

[6] The photographic identification by the deceased third witness would most probably be inadmissible hearsay. See *Commonwealth* v. *Mandeville,* 386 Mass. 393, 398 & n.3 (1982), citing *Commonwealth* v. *Gallo,* 275 Mass. 320, 335 (1931). On this record we have no way of evaluating that identification in terms of reliability.

[7] Compare the many cases where an element of official suggestiveness *precedes* the initial identification, as in the showup cases, see *Commonwealth* v. *Coy,* 10 Mass. App. Ct. 367, 371-374 (1980), *Commonwealth* v. *Hicks,* 17 Mass. App. Ct. at 583-584, and *Commonwealth* v. *Perretti,* 20 Mass. App. Ct. 36, 41-42 (1985), or those in which a photograph array is claimed to suggest a particular result through depiction of a distinctive physical characteristic, as in *Commonwealth* v. *Napolitano,* 378 Mass. 598, 602-603 (1979), and *Commonwealth* v. *Melvin,* 399 Mass. at 206-207, or through a distinctive format, as in *Commonwealth* v. *Clark,* 378 Mass. 392, 399-401 (1979), and *Commonwealth* v. *Worlds,* 9 Mass. App. Ct. 162, 167 (1980).

cation; and the source of her information was a police officer who divulged it for the purpose of putting her doubts to rest.

*Order allowing motion to*
*suppress affirmed.*