## COMMONWEALTH *vs.* BUNNY WARREN.

Essex.  May 4, 1988. — August 1, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Identification. Practice, Criminal*, Motion to suppress. *Evidence*, Identification.

The judge at a criminal trial erred in allowing a motion to suppress a photographic identification of the defendant on the ground that the witness did not see the faces of the assailants, where he had ruled that there were no impermissibly suggestive procedures employed in the showing of the photographic array. [139-140]

The issue of the reliability of a witness's pretrial identification of a criminal defendant, under circumstances where the identification evidence is admissible, is properly for the jury's consideration. [140-141]

INDICTMENTS found and returned in the Superior Court Department on September 17, 1986.

A pretrial motion to suppress evidence was heard by *Robert S. Prince*, J.

An application for leave to file an interlocutory appeal was allowed by *Nolan*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*David A. Grossbaum*, Assistant District Attorney, for the Commonwealth.

*Richard N. Gottlieb* for the defendant.

O'CONNOR, J. The defendant stands indicted for assault with intent to murder and assault and battery with a dangerous weapon arising out of the shooting of Luis Vega. This is the Commonwealth's interlocutory appeal from an allowance of the defendant's motion to suppress Juan Baez's pretrial photographic identification of the defendant as one of a group of men who attacked Vega. We transferred the appeal from the

Appeals Court to this court on our own motion. We reverse the suppression order.

The judge, who heard the motion to suppress the photographic identification by Baez, at the same time heard a second motion to suppress photographic and probable cause hearing identifications by Vega. The judge reported his findings relative to both motions in a written memorandum. He found that the police separately showed Vega, Baez, and a third person two books of photographs of black and Hispanic males. Each book had forty-six photographs of similar size and makeup displayed in separate sleeves. Vega identified a photograph of the defendant in the second book shown to him as depicting the man who had shot him. Subsequently, Baez identified the same photograph, using words like "it looks like" and "I'm not sure." The third person failed to identify any photograph.

The judge reported in his memorandum that "[a]fter examining the Grand Jury minutes and probable cause hearing transcripts which were introduced as exhibits, this court is satisfied that Juan Baez did not see the faces of the assailants at the time of the attack and it was so testified . . . at the District Court. At that same time Baez failed when asked to identify Warren, who was sitting near others in the spectator section of Court. Baez was around the corner from the scene of the shooting and some distance from the suspect or suspects when he saw them but could not distinguish their features clearly."

The judge found that "[t]he identification procedures . . . were in accordance with recognized procedures and were valid and not improperly suggestive. The identification of the defendant at the probable cause hearing by the victim at the District Court was also valid and not improperly suggestive and not based on tainted prior identifications." Despite his finding that the identification procedures were not improperly suggestive and were valid, the judge concluded that "on review of [Baez's] testimony and statements to others concerning his ability to see and identify either this defendant or any other suspect at the scene[, Baez] provides no independent basis for making the photographic selection he is alleged to have made. He did not testify at the hearing on the motion to suppress . . . and made

no in-court identification in the District Court [at the probable cause hearing]." As a consequence, although the judge denied the motion to suppress evidence of Vega's pretrial identifications, he allowed the motion to suppress Baez's photographic identification, which was the only pretrial identification Baez made.

On a motion to suppress a pretrial photographic identification, the question is whether "the procedures employed in the showing of the photographic arrays . . . were so unnecessarily suggestive and conducive to mistaken identification as to deny the defendant due process of law. *Stovall* v. *Denno*, 388 U.S. 293, 301-302 (1965). *Commonwealth* v. *Venios*, 378 Mass. 24, 26-27 (1979). . . . *Should such a showing be made*, the burden then on the Commonwealth, if it wishes to use evidence of the identification at trial, is that 'of establishing by "clear and convincing evidence" that the proffered identification has a source independent of the suggestive confrontation.' *Commonwealth* v. *Botelho*, 369 Mass. 860, 865-868 (1976). *Venios, supra.*" (Emphasis added.) *Commonwealth* v. *Correia*, 381 Mass. 65, 77-78 (1980). It also may be that a pretrial identification following an impermissively suggestive procedure would be made admissible by a clear and convincing demonstration that the proffered identification is "reliable" within the less strict standard of *Manson* v. *Brathwaite*, 432 U.S. 98 (1977). We need not decide that question. In any event, the independent source and reliability tests are no part of the judicial inquiry where, as here, the procedures in showing the photographic arrays were not suggestive. When the procedures are not suggestive, the pretrial identifications are admissible without a further showing. "The question raised by a motion to suppress identification testimony is not whether the witness was or might be mistaken but whether any possible mistake was or would be the product of improper suggestions made by the police." *Commonwealth* v. *Paszko*, 391 Mass. 164, 172 (1984), quoting *Commonwealth* v. *Gordon*, 6 Mass. App. Ct. 230, 237 (1978). See *Commonwealth* v. *Bowie*, 25 Mass. App. Ct. 70, 75 (1987).

The defendant argues that, in practical effect, the judge's allowance of the suppression motion operated as a ruling in limine excluding the identification evidence on the ground that the identification was not based on personal knowledge. It appears that the judge found as a fact that Baez's observations were insufficient to enable him to identify the defendant as one of Vega's assailants. It may be, however, that the judge simply concluded as a matter of law that there was no evidence which would be available to the Commonwealth at trial sufficient to warrant a finding that Baez's photographic identification of the defendant was based on his personal observations. We discuss those two possibilities below, but in either event, we conclude that, since the photographic identification procedures were not impermissibly suggestive, the evidence should not have been suppressed. See *Commonwealth* v. *Bonnoyer*, 25 Mass. App. Ct. 444, 448 (1988) ("the photographic identification . . . , on the judge's findings, was unreliable but was not for that reason alone inadmissible as substantive evidence against the defendant, not having been the product of suggestion by the police").

To the extent that the judge's order was based on a factual determination that Baez's identification was unreliable because it was not based on adequate observation of Vega's assailants, the cases we have cited make clear that the question of the witness's reliability was not before the judge. On the other hand, if the judge's order simply reflected his determination that the Commonwealth could not produce at trial sufficient evidence to warrant a finding that Baez's pretrial identification was based on personal observation, the order still cannot stand. One reason the order cannot stand is that the motion to suppress did not put the Commonwealth on notice that it should be prepared to demonstrate at the motion hearing that it reasonably expected to be able to produce trial evidence concerning Baez's observations of Vega's assailants. That question is not the same as whether the identification procedures were impermissibly suggestive.

Also, even if the Commonwealth had been on notice that the judge would address the question whether the Common-

wealth could produce evidence that Baez's pretrial identification was based on his personal observations, that question should not have been addressed for reasons of sound policy. That policy is the same one that has led this court, in some circumstances, to admit pretrial identification evidence for probative purposes even when the identifying witness cannot or will not identify the defendant at trial. See *Commonwealth* v. *Daye*, 393 Mass. 55, 60 (1984); *Commonwealth* v. *Weichell*, 390 Mass. 62, 71 (1983), cert. denied, 465 U.S. 1032 (1984); *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 409 (1978). "Prior identifications are admissible as probative evidence notwithstanding their hearsay attributes because of the superior probative worth of an identification made closer in time to the events in question." *Commonwealth* v. *Daye*, *supra* at 61. *Commonwealth* v. *Torres*, 367 Mass. 737, 739 (1975). Furthermore, it is appropriate to recognize the possibility that fear will motivate a person who has made a pretrial identification to disclaim the ability to do so at trial. Cf. *Commonwealth* v. *Daye*, *supra* at 58; *Commonwealth* v. *Fitzgerald*, *supra* at 413. It would be inconsistent with the policy expressed in *Daye*, *Weichell*, and *Fitzgerald* to exclude evidence of a nonsuggestive pretrial identification because at trial the witness is unable or unwilling to lay a foundation by testifying to the observations that led to his pretrial identification. A defendant's due process rights are not violated so long as the identifying witness is present in court, is available to be cross-examined, and acknowledges the extra-judicial identification. *Commonwealth* v. *Daye*, *supra* at 60. *Commonwealth* v. *Fitzgerald*, *supra* at 408-410. Thus, in the present case, if Baez acknowledges at the trial his pretrial photographic identification of the defendant as one of the assailants, and is available for the defendant's cross-examination, the pretrial identification evidence will be admissible for probative purposes, and its reliability will be for the jury.

*Suppression order reversed.*