COMMONWEALTH vs. RICHARD J. RILEY.

No. 88-P-354.

Middlesex.  October 6, 1988. — November 15, 1988.

Present: GREANEY, C.J., SMITH, & FINE, JJ.

*Identification. Practice, Criminal*, Cross-examination.

A criminal defendant's motion to suppress testimony of photographic iden-
   tifications was properly denied where the victim's identifications were
   shown to be based on her observations of the assailant during an assault
   upon her and were not the result of a police officer's improper, unneces-
   sary, and suggestive remarks with respect to the photographs selected,
   tending to confirm the victim's choice. [553-555]
At a criminal trial, no grounds for suppressing the victim's testimony of
   an in-person identification were presented in the absence of a showing
   that the identification procedure was suggestive. [555]
Where, at a criminal trial, the defendant failed to bring to the judge's
   attention the likelihood that effective cross-examination of a certain
   prosecution witness would expose the jury to prejudicial information,
   any unfairness resulting from the defendant's dilemma presented no
   issue for appellate review. [556]

INDICTMENTS found and returned in the Superior Court De-
partment on September 29, 1981.

A pretrial motion to suppress evidence was heard by *Stanford
L. Strogoff*, J., sitting under statutory authority, and the cases
were tried before *John Paul Sullivan*, J.

*Regina Zupan*, Committee for Public Counsel Services, for
the defendant.

*Cheryl A. Jacques*, Assistant District Attorney, for the Com-
monwealth.

FINE, J.   The only real issue at the defendant's trial was
whether he was the individual who broke into an apartment in
Somerville in the early morning hours of July 7, 1981, and
attacked the victim. Other than evidence that he glared at the

victim when, unexpectedly, she entered a crowded courtroom some five weeks after the incident, the only evidence linking the defendant to the crime was the victim's in-court identification and testimony about her several out-of-court identifications. In November of 1982, a judge denied the defendant's motion to suppress the identification testimony. Following the motion hearing, the defendant was convicted of assault with intent to commit rape, indecent assault and battery, and armed burglary and assault on an occupant. In 1986, the judge who had decided the motion to suppress and presided over the trial allowed the defendant's motion for a new trial. Again, after a second jury trial, the defendant was convicted of all the charges. On appeal, the defendant contends, first, that the judge erred in denying his motion to suppress and, second, that, because the suggestions made by the police to the victim implicated the defendant in other crimes, he was effectively deprived of his right to cross-examine his accusers.

We recite the subsidiary facts found by the motion judge, supplemented by uncontroverted testimony. The victim, a thirty-year-old music teacher with a responsible administrative position, was awakened by noise while alone in her apartment in Somerville at 2:30 A.M. on July 7, 1981. She remained awake, reading and watching television, with a bright night-lamp on. Sometime after 3:30, she heard more noise and saw a man crouching by her bed looking up at her. The man attacked her. As they struggled, for about two seconds she looked at his face, which was two inches away from hers. She watched his face again from an arm's length away for about six seconds as he was grabbing her chest. She screamed, and he started to leave. She watched him as he ran out.

Within three or four minutes the police arrived, and the victim described her assailant to them as follows: "about 5" 4' ('about my height'); weight - 120-130 pounds; age - 18-25; color - white; hair - blond, kinky; clothes - blue jeans only; no facial hair; with his 'head too big for his body'; and a good tan." The police had brought books of photographs with them which they showed to the victim. She pointed out three photographs, identifying features in each resembling those of her

assailant, but stated that none of the photographs depicted her assailant.

On August 7, 1981, the victim went to the police station to look at more pictures. As she began, the officer said only, "See if you can pick out the assailant." After viewing one book, she selected a photograph of the defendant. She said, "I think that's the man." She stated that the photograph varied from her recollection of the assailant in that in the photograph the person's hair was less kinky and shorter, the person depicted had a moustache, and his complexion was different from that of her assailant. After the victim selected the photograph, the officer said, "You picked out the same picture as Jan did." The victim did not know, and was not told, who "Jan" was. She was shown another book of photographs from which she did not make any selection. She was then shown a third group. She selected a photograph of the defendant from the third group and said, "This is definitely him." The photograph was a more recent one than the one she had selected earlier; in it the defendant had no moustache, his hair was longer and kinkier, and his complexion was darker. The victim was then told that the person whose picture she had selected had been charged with some other sex crimes. She was asked whether she would be willing to go to the Somerville District Court within a few days, as, she was told, he might be there on the other charges.

On August 11, 1981, the victim identified the defendant in a crowded courtroom after being told to look around the room. The defendant was one of six men in the prisoner's dock. The defendant appeared shocked when he made eye contact with the victim, reacting nervously and squirming in his seat. The victim, without reservation, identified the defendant again at a probable cause hearing on August 17, 1981.

After considering the reliability factors set forth both in *Manson* v. *Brathwaite*, 432 U.S. 98 (1977), and several Massachusetts cases,[1] the judge ruled that the photographic identifications were "not unnecessarily suggestive and were, in fact,

---

[1] The factors are as follows: "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention,

highly reliable." He found also that neither the in-person identification based on the confrontation on August 11, 1981, at the Somerville court, nor the identification at the probable cause hearing, was tainted due to unnecessary suggestiveness. Implicitly, the judge decided that the suggestive factors in the victim's identifications of her assailant were outweighed by the reliability factors. The question for us to decide is whether, on the uncontroverted testimony and the subsidiary facts found by the judge, that conclusion is correct.

We agree with the defendant that the police officer's remark about "Jan" was both unnecessary and suggestive. It had a tendency to confirm in the victim's mind the correctness of her initial tentative choice of the defendant's photograph. So, too, was it unnecessarily suggestive for the officer to let the victim know, after she had selected the second photograph of the defendant and before the in-court confrontation, that the defendant was facing other sex-related charges. That information had a further tendency to confirm the identification of the defendant as her assailant in the victim's mind.

Unnecessarily suggestive identifications need not be excluded, however, where it is determined, based on the totality of the circumstances, that the suggestiveness has not caused the identifications to be unreliable. See *Commonwealth* v. *Bernard*, 6 Mass. App. Ct. 499, 505 (1978); *Commonwealth* v. *Cincotta*, 6 Mass. App. Ct. 812, 816-817 (1979); *Commonwealth* v. *Avery*, 12 Mass. App. Ct. 97, 102-103 (1981); *Commonwealth* v. *Hicks*, 17 Mass. App. Ct. 574, 577-578 (1984); *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, 467-468 (1986), cert. denied, 479 U.S. 838 (1986); *Commonwealth* v. *Jones*, 25 Mass. App. Ct. 55, 60 (1987); *Commonwealth* v. *Laaman*, 25 Mass. App. Ct. 354, 362 (1988). The focus of the required analysis is on the initial identification, not the

---

[3] the accuracy of his prior description . . . , [4] the level of certainty demonstrated at the confrontation, and [5] the time between the crime and the confrontation." *Manson* v. *Brathwaite*, 432 U.S. at 114. *Neil* v. *Biggers*, 409 U.S. 188, 199-200 (1972). See also *Commonwealth* v. *Botelho*, 369 Mass. 860, 867-869 (1976); *Commonwealth* v. *Mobley*, 369 Mass. 892, 895-896 (1976); *Commonwealth* v. *Venios*, 378 Mass. 24, 27 (1979).

later repetitions, and of most importance are the victim's attentiveness and opportunity to observe the assailant during the commission of the crime. See *Commonwealth* v. *Wheeler*, 3 Mass. App. Ct. 387, 392 (1975); *Commonwealth* v. *Hicks*, 17 Mass. App. Ct. at 577.

Although the victim may have seen her assailant's face for no more than eight seconds, the judge found that she had an adequate opportunity to observe him. See *Commonwealth* v. *Correia*, 381 Mass. 65, 75 & n.2 (1980); *Commonwealth* v. *Melvin*, 399 Mass. 201, 203 (1987). The lighting was good, the witness was alert and intelligent, and the terrifying circumstances of the assault were likely to fix her attention on the assailant and imprint his features in her mind. The victim's immediate description to the police was unusually detailed and found by the judge to be "remarkably identical to the defendant's physical characteristics."

The defendant emphasizes that the victim could only say, "I think that's the man" when she selected the first photograph. Rather than indicating unreliability, however, the circumstances of that first selection indicate a very high degree of reliability. The victim explained her reservations by calling the officer's attention to specific physical differences between the defendant's appearance in the photograph and her recollection of his appearance during the incident. When later shown a more recent photograph, depicting the very changes in his appearance to which she had referred, she expressed no doubt that the man in the photograph was her assailant. The victim made her unequivocal identification only a month after the incident, soon enough for her memory to have remained intact. See *Commonwealth* v. *Porter*, 384 Mass. 647, 657-658 (1981). There is no evidence that the victim ever identified anyone other than the defendant or that, from the hundreds of photographs she was shown on several occasions, she ever selected a photograph of someone other than the defendant. See *Commonwealth* v. *Key*, 19 Mass. App. Ct. 234, 240 (1985).

Against these strong indicia of reliability, we weigh the officer's two improperly suggestive remarks. The officer's reference to "Jan" was made after the victim had already provided

a detailed description of her assailant to the police, selected the defendant's photograph, and noted specific differences between the photograph and her recollection of his appearance at the crime scene. Although it was a reasonable assumption on the victim's part that "Jan" was another woman against whom a sex offense had been committed, the victim knew that only she was present during the incident in her bedroom and only she could identify her assailant. As to the second suggestive remark, the officer simply should not have told the victim that the defendant was charged with other sex crimes. Before that improper remark was made, however, the victim had made an unequivocal identification of the defendant from a more recent photograph. Moreover, it is not unusual, while an investigation or prosecution of a case is pending, for a crime victim to learn facts confirmatory of a suspect's guilt or about his criminal history. See *Commonwealth* v. *Bonnoyer,* 25 Mass. App. Ct. 444, 451 (1988). As long as the initial identification and its later repetitions are based on the witness' firsthand observations, no admissibility problem arises. *Id.* at 451.

The Somerville courtroom confrontation also raises questions of propriety. See *Commonwealth* v. *Napolitano,* 378 Mass. 599, 605-608 (1979). It is not clear whether it was arranged as a reasonable step in the investigation or in an attempt to bolster the victim's identification. See *Martin* v. *Donnelly,* 391 F. Supp. 1241, 1248 (D. Mass. 1974). Compare *Commonwealth* v. *Marks,* 12 Mass. App. Ct. 511, 514-515 & n.5 (1981). The defendant failed to produce any evidence, however, that the particular circumstances of the courtroom identification were suggestive. Although the confrontation may have been unnecessary and a line-up preferable, we decline to rule that any possibly improper police motivation tainted the otherwise reliable identification. Further, nothing suggestive has been pointed to in connection with the victim's identification of the defendant at the probable cause hearing. Thus, considering the totality of the circumstances, we conclude that the reliability test has been satisfied as to both the in-person and the photographic identifications.

On the second point raised by the defendant on appeal, his inability as a practical matter to conduct effective cross-examination, unquestionably he was faced with a dilemma at trial: whether or not to cross-examine the victim about the suggestiveness of the police officers' statements. To do so would have brought to the jury's attention the information that "Jan" had also identified the defendant's photograph and that he had been charged with other sex crimes. To the extent that the defendant is relying on *Commonwealth* v. *Bonnoyer*, 25 Mass. App. Ct. at 448-452 (information conveyed by the police to the identifying witness that a codefendant had made a confession implicating the defendant), he would have to have raised the issue before the trial judge, who may have had some discretion to protect him against the unfairness of the situation. The defendant failed to point out the unfairness of his dilemma at the appropriate time to the trial judge in this case.

*Judgments affirmed.*