COMMONWEALTH vs. CHRISTOPHER G. AYLES.

No. 90-P-1235.

Worcester. September 11, 1991. - November 7, 1991.

Present: KASS, FINE, & JACOBS, JJ. ·

*Practice, Criminal*, Findings by judge. *Identification. Evidence*, Identification, Photograph. *Due Process of Law*, Identification.

In a rape case in which the victim, on the basis of a photographic array shown her by police shortly after the incident, identified the defendant as the man who had raped her, the totality of circumstances attending the array indicated that the defendant had not sustained his burden of proving, by a preponderance of the evidence, that the array, or the police activities accompanying it, were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and thereby offend due process. [516-519]

In a rape case in which the victim, on the basis of a photographic array shown her by police shortly after the incident, identified the defendant as the man who had raped her, the judge was not required to exercise his discretion to counteract certain alleged prejudice, caused by pretrial statements by the police, by prohibiting the victim's in-court identification of the defendant, where the victim's identification of the defendant's photograph was certain and unaffected by any statements by the police, and where the statements by the police, while potentially prejudicial, would not have been "ruinous" to the defendant's case if elicited from the victim during cross-examination. [519-520]

INDICTMENT found and returned in the Superior Court Department on June 15, 1988.

A pretrial motion to suppress evidence was heard by *William C. O'Neil, Jr.*, J., and the case was tried before him.

*Carlo A. Obligato*, Committee for Public Counsel Services, for the defendant.

*John J. Conte*, District Attorney, & *Elizabeth M. Maunsell*, Assistant District Attorney, for the Commonwealth, submitted a brief.

JACOBS, J. The defendant appeals from his Superior Court conviction of aggravated rape,[1] claiming that his pretrial motion to suppress the victim's identification of him was erroneously denied. Since the record contains no findings of fact, we summarize the relevant evidence introduced through the victim and a police officer, the only witnesses at the motion hearing.

The victim testified that a man appeared next to her at her car as she was about to leave for work at approximately 6:30 A.M. on January 22, 1988, that she did not see where the man had come from, that he held a knife, that she was very afraid, and that she was "forced to perform various sexual acts," immediately following which the man left. She further testified that she had seen the man two days before, also at about 6:30 A.M., when, while she was seated in her car, he asked her for directions to Orange Street. At the time he was leaning over her car with his hands on the window. The victim stated she answered that she did not know where Orange Street was and then drove her car away. She testified that the entire conversation lasted more than two seconds but was not "terribly long."

Approximately one-half hour after the rape, the victim described her assailant as having sandy blond or light brown hair and as being of slight build, young and white. She stated that while at a hospital on the morning of the rape a police officer spread "a bunch" of photographs before her and after looking at each one over "a relatively short time" she selected a photograph of the defendant. She further testified that the photographs "were all basically the same" and that more than two depicted a man with brown hair.

The victim testified that she "believe[d]" that before she selected the defendant's photograph, the police officer told her that he "had a suspect in mind" and he "had a good idea of who did it," but did not indicate that the suspect's photograph was in the array. The officer in his testimony denied

---

[1]On the record before us the defendant has not appealed from his related conviction of assault by means of a dangerous weapon. Nothing turns on this in view of our disposition of the aggravated rape conviction.

making such statements prior to her selection. During the motion hearing, defendant's counsel asked the victim: "You picked out the photo that looked most like the man who raped you; is that right?" The victim responded: "I picked out the photo of the man who did rape me."

The police officer testified that while the victim was at the hospital he showed her an array of eleven photographs (which were introduced in evidence) and asked her if she was able to identify any of them; that after she looked at the photographs for approximately two minutes, she picked out that of the defendant. He stated that after she had done so, he told her that he had a suspect in mind, that the person whose photograph she selected lived on her street and was a suspect in other cases of assaults on women. On a later occasion, he told her that the defendant was in custody.

During cross-examination, the officer testified that before assembling the array he had received a description from the victim to the effect that the assailant was a young, thin teenager, and "kind of a good looking fellow" with dirty blond, light brown hair. At the time, he suspected the defendant and another man who also lived on the victim's street and, therefore, included their photographs. He indicated that he displayed the photographs to the victim at approximately noontime on January 22, 1988, and while scanning the photographs, she would stare at the defendant's photograph, occasionally glancing away and then returning her gaze to his photograph. He stated that after she selected the photograph of the defendant and handed it to him, he asked her "if there was any doubt in her mind that that was [the assailant] and she said no."

At the trial, the victim made an in-court identification of the defendant and was examined concerning her pretrial selection of the defendant's photograph. Also, the photographs comprising the array were admitted in evidence.

The importance and desirability of findings of fact have frequently been commented upon. See *Commonwealth* v. *Cook*, 351 Mass. 231, 234 (1966); *Commonwealth* v. *Forrester*, 365 Mass. 37, 45 (1974); *Commonwealth* v. *Garcia*,

379 Mass. 422, 428 (1980). Failure to make findings, however, is not fatal where the judge's conclusions relating to the decided issues are clearly evident from the record, and, therefore, reviewable as a matter of law. *Commonwealth* v. *Forrester, supra* at 45. *Commonwealth* v. *Parham,* 390 Mass. 833, 837-838 (1984). See *Commonwealth* v. *Mattias,* 8 Mass. App. Ct. 786, 788 (1979); *Commonwealth* v. *Downs, ante* 467, 470-471 (1991). The transcript of the hearing indicates that the Commonwealth was content to limit the inquiry to the question whether the defendant sustained his burden of proving undue suggestion and made no attempt to adduce evidence of the reliability of the identification or the existence of an independent source for it. Viewed in the light of that tactic, the clear implication of the denial of the motion is that the judge concluded that the photographic array procedure was not unduly suggestive. There was, therefore, no necessity for embarking on a bifurcated analysis. See *Commonwealth* v. *Warren,* 403 Mass. 137, 139 (1988). Although the basis for the judge's ruling is, thus, sufficiently well defined to permit our review, we again "emphasize that the absence of findings by the trial judge handicaps the process of review and invites a remand." *Commonwealth* v. *Mattias, supra* at 788.

Even if we do not resolve issues of credibility adversely to the defendant (as we should, given the absence of findings, see *Commonwealth* v. *Quigley,* 391 Mass. 461, 463 (1984)), and credit the victim's testimony that the police officer told her that he "had a suspect in mind" and "had a good idea of who did it" before displaying the photographs to her, those statements alone would not render the array procedure unduly suggestive. *Commonwealth* v. *Napolitano,* 378 Mass. 599, 603 n.6 (1979). *Commonwealth* v. *Melvin,* 399 Mass. 201, 206-207 & n.9 (1987). See Sobel, Eyewitness Identification § 5.3(e) at 5-32 (1990). Viewing the totality of circumstances attending the array, *Commonwealth* v. *Botelho,* 369 Mass. 860, 867 (1976), we conclude the defendant did not sustain his burden of proving, by a preponderance of the evidence, *Commonwealth* v. *Holland,* 410 Mass. 248, 253

(1991), that the array, or the police activities accompanying it, were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and thereby offend due process. *Commonwealth* v. *Melvin, supra* at 205, quoting from *Simmons* v. *United States*, 390 U.S. 377, 384 (1968). Aside from the statements, there was no evidence of preselection suggestion. The statements hardly rise to the level of pointed indications that any pictured person was the assailant. See *Foster* v. *California*, 394 U.S. 440, 443 (1969). They would only confirm the inference that a victim reasonably could be expected to draw from any array, namely, that it contains photographs of persons suspected by the police of being the assailant. *State* v. *Williams*, 203 Conn. 159, 177 (1987). *Drewry* v. *Commonwealth*, 213 Va. 186 (1972). *Fells* v. *State*, 65 Wis. 2d 525, 538 (1974).

The police officer's postidentification statement that the person whose photograph had been selected was a suspect in other assaults on women was clearly inappropriate. See *Commonwealth* v. *Riley*, 26 Mass. App. Ct. 550, 555 (1988). Of pivotal importance, however, is the fact that the victim's preceding identification was made without hesitation or equivocation. Compare *Commonwealth* v. *Bonnoyer*, 25 Mass. App. Ct. 444, 451 (1988). In the circumstances of a photo identification made with certitude and without undue suggestion, the later receipt by the victim of information tending to confirm the suspect's guilt does not, of itself, give rise to problems of admissibility with respect to later in-court identifications. *Commonwealth* v. *Bonnoyer, supra* at 451. *Commonwealth* v. *Riley, supra* at 555. It is not unusual for a crime witness to identify a suspect and later be exposed to pretrial information tending to confirm the correctness of that identification. The critical issue is whether an earlier identification has been corrupted by that information. Absent evidence at the motion hearing of such corrupting effect or a showing of undue suggestion attendant on the photo array, no taint attached to the subsequent in-court identification. *Commonwealth* v. *Venios*, 378 Mass. 24, 29 (1979).

In view of our conclusion that the defendant did not sustain his burden of proving impermissibly suggestive police conduct, there is no need to determine whether certain indicia of reliability exist or whether any subsequent identification was based on an independent source. *Commonwealth* v. *Warren*, 403 Mass. 137, 139 (1988). *Commonwealth* v. *Thornley*, 406 Mass. 96, 99 (1989). *Commonwealth* v. *Holland, supra* at 253 n.6.

The defendant claims that he was deprived of his constitutional right of confrontation by the denial of his motion to suppress in that it resulted in a dilemma: any testing at trial of the victim's in-court identification of the defendant by cross-examining her as to the confirmatory effect of the police officer's pretrial statements could be undertaken only at the peril of having the jury informed that the defendant was suspected of assaults on other women. He relies entirely on our decision in *Commonwealth* v. *Bonnoyer, supra*. In so doing, he overlooks the opinion's stressing of "the unique configuration of facts" in that case. 25 Mass. App. Ct. at 451. In *Bonnoyer*, the court noted that the witness's initial identification was unreliable and that her latest ability to identify the defendant was a product "not of her observations at the time of the [crime] but of the confirmatory evidence." *Ibid*. Neither factor is here present. The victim's identification of the defendant's photograph was certain, unhesitant and, as we have concluded, unaffected by any confirmatory information. The evidence at the motion hearing did not reveal any doubt on the part of the victim which might be tested after an in-court identification. The constitutional dimensions of the right of cross-examination, see *Commonwealth* v. *Michel*, 367 Mass. 454, 459 (1975), and cases cited, are recognized and preserved by the victim's availability for cross-examination at the time of any in-court identification. *United States* v. *Owens*, 484 U.S. 554, 559-560 (1988). *Commonwealth* v. *Bonnoyer, supra* at 449.

While we indicated in *Bonnoyer* at 449-450 "that the trial judge, in the interest of fairness, had discretion to counteract the prejudice to the defendant in a reasonable manner," the

judge here was not required to exercise that discretion by prohibiting the victim's in-court identification of the defendant, especially where the officer's statements, while potentially prejudicial, were not "ruinous" to the defendant's case. *Id.* at 449. Instead, the judge, at trial and upon proper request, could have mitigated the dilemma by an instruction to the jury that the officer's statements were to be received, not for their truth, but only for their possible effect upon the victim's in-court identification of the defendant. The presumed efficacy of this type of limiting instruction has long been recognized. *Commonwealth* v. *Leno*, 374 Mass. 716, 719 (1978).

*Judgment affirmed.*