COMMONWEALTH vs. DOUGLAS AVERY.

Hampden. April 30, 1981. — June 16, 1981.

Present: HALE, C.J., GREANEY, & SMITH, JJ.

*Identification. Due Process of Law,* Identification.

At the trial of a defendant on charges arising from the beating and rape of a woman at the local headquarters of a motorcycle club, there was no error in the denial of the defendant's motion to suppress an out-of-court identification of him by the victim who had been shown eighteen photographs, in three of which the defendant appeared, where the police, although they suspected members of the defendant's club, had not focused on any particular suspect, did not prompt the victim at all, and included in the array multiple photographs of other suspects, and where the identification was reliable under the test enunciated in *Neil* v. *Biggers,* 409 U.S. 188 (1972), and *Manson* v. *Brathwaite,* 432 U.S. 98 (1977). [101-103]

At a criminal trial, there was no error in the denial of the defendant's motion to suppress a witness's in-court identification of him where there was clear and convincing evidence that the in-court identification had a source independent of a suggestive identification that took place in a District Court prior to a probable cause hearing on the charges. [103]

INDICTMENTS found and returned in the Superior Court on November 7, 1975.

Pretrial motions to suppress evidence were heard by *Tisdale,* J., and the cases were tried before *Bregianes,* J., a District Court judge sitting under statutory authority.

*Murray Shulman* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant, among others, was the subject of four indictments: two for rape, one for assault and battery by means of a dangerous weapon, and one for assault and battery. The indictments involved the same victim.

Before the trial in the Superior Court, the defendant filed a motion to suppress (1) pretrial identifications consisting of (a) his identification by the victim as a result of a photographic array; (b) his identification by the victim at a District Court just prior to the commencement of the probable cause hearing; and (2) the anticipated in-court identification. After a hearing that extended over seven trial days and almost seven hundred pages of transcript, a judge of the Superior Court denied the motion and filed detailed findings of fact and rulings of law. At the trial the victim testified as to the out-of-court photographic identification and also made an in-court identification of the defendant. The Commonwealth did not offer the pretrial District Court identification nor was it referred to at trial.[1] The defendant has appealed from his convictions and assigns as error (1) the denial of his suppression motion which permitted the admission in evidence of the out-of-court photographic identification; and (2) the admission of the in-court identification. One of the claims of the defendant as to the in-court identification is that it was fatally corrupted by the pretrial District Court identification, even though that identification was not offered at trial.

As to our scope of review of the findings of fact made by the motion judge, "We shall accept his findings of fact as binding in the absence of clear error . . . and view with particular respect the conclusions of law which are based on them." *Commonwealth* v. *Correia,* 381 Mass. 65, 76 (1980). However, with respect to the ultimate conclusions of law reached by the judge, we shall undertake an independent examination of the facts found by the judge to ascertain whether they involve a deprivation of the defendant's con-

---

[1] The Commonwealth did offer, at trial, the identification of the defendant made by the victim at the probable cause hearing. However, the Commonwealth did not offer or refer to the identification of the defendant made by the victim just prior to the hearing. Defense counsel did refer to that identification briefly during the course of his cross-examination. It is that identification that is the subject of the defendant's objection.

stitutional rights. *Id.* See *Commonwealth* v. *Harmond,* 376 Mass. 557, 560 (1978). *Commonwealth* v. *Moon,* 380 Mass. 751, 756 (1980). We summarize the judge's findings. During the afternoon of August 16, 1975, the victim, while walking to a store, was given a ride by two young men, previously unknown to her. During the course of the ride she was asked to go to a party where other men and girls would be in attendance. She agreed, and after the men stopped to purchase some beer and gin, she was driven to a building on College Highway in Southwick. The building consisted of two levels with a garage area on the ground level and a living area on the upper level. The victim and the two men entered the garage and inside there were four other men, including the defendant. Some of the men wore the colors of the Mothers Motorcycle Club (Mothers), and others wore the colors of another motorcycle club. Almost immediately one of the men attempted to molest her sexually, and very shortly thereafter a man whom she later identified as the defendant attacked and raped her. A short time later, the defendant threatened her with a knife in order to get the victim to take off her clothes. While naked, she was forced to run around a pool table in the presence of about ten men and was hit on the head with what appeared to be a broom handle by a person other than the defendant. She eventually left after being in the presence of the defendant for several hours. Shortly after 8:00 P.M on August 16, 1975, two men (unconnected with the attack) brought the victim to the Southwick police station. She was dazed, disheveled, distraught, and in a somewhat befuddled condition. She related to Sergeant LaBombard that she had been raped and sexually molested, and otherwise assaulted and beaten. She described the building, which was known by LaBombard to be the local headquarters of the Mothers. Because of her condition she was taken to the hospital in Westfield, treated and then released. On the evening of August 17, 1975, she returned to the Southwick police station where she gave a written statement describing what

had happened to her between 4:00 P.M. and 8:00 P.M. on August 16, 1975, including a general description of at least some of the men who had mistreated or abused her.

The victim made an identification of the defendant from a photographic array on August 18, 1975, at the Southwick police station. Prior to the identification, the defendant and one Martone were known by LaBombard to be members of the Mothers. The Mothers had a membership of about ten, and LaBombard regarded all members of the Mothers as potential suspects as a result of hearing the victim's stories on August 16 and 17, but neither LaBombard nor his police associates focused on any particular Mother as a suspect prior to the photographic identification procedure.

LaBombard assembled from the Southwick and West-field police departments mug shots and other photographs of men matching the descriptions supplied by the victim, and more particularly young men who looked like persons who were known to be members of motorcycle clubs. The packet consisted of eighteen photographs, some being mug shots and others being Polaroid or color photographs. Included in the group were two color photographs in each of which the defendant and Martone were shown.[2] Also included in the array were a mug shot of the defendant and two additional photographs of Martone. All eighteen photographs were approximately the same size, and Martone appeared in four of them, the defendant in three (two with Martone) and one Gonsalves in two of the photographs. On the evening of August 18, the victim came to the Southwick police station and was given the stack of eighteen pictures and asked to select any photographs that showed any person who was in the garage on August 16 or who had touched her or done anything to her on that date. She was not told where the photographs came from or who the individuals shown in them were or whether any of the

---

[2] The method by which these two photographs came into the hands of the police was the basis of a suppression hearing. The judge denied the motion, and that denial is not the subject of this appeal.

men shown were members of the Mothers, nor was she given any other information about the men in the pictures. Nothing was said to her while she was examining the photographs. Without hesitation, she selected and positively identified the defendant from the photographs as the first man who raped her shortly after she had arrived at the garage on August 16. She also indicated that several other pictures were of men who appeared to look like or resembled men who were there on August 16, but she could not identify any of them with any degree of certainty. Martone was never identified as a look-alike.

It is settled that the defendant has the burden of proving by a preponderance of the evidence that the procedures employed in the showing of the photographic array were so unnecessarily suggestive and conducive to mistaken identification as to deny the defendant due process of law. *Commonwealth v. Botelho,* 369 Mass. 860 (1976). *Commonwealth v. Venios,* 378 Mass. 24, 26-27 (1979). *Commonwealth v. Correia, supra* at 74. Such a showing must depend on the totality of the circumstances of the confrontation alleged to be impermissibly suggestive.

At the time the victim was shown the eighteen photographs, the police had not made any arrest and, although they suspected members of the Mothers, they had not focused on any particular suspect. The evidence supports the judge's findings that the victim received no prompting from the police at all. The fact that the defendant's photograph appeared three times among the eighteen photographs, while not above criticism, does not require a finding of suggestiveness if the procedure, taken as a whole, was fair. *United States v. Mears,* 614 F.2d 1175 (8th Cir. 1980) (defendant was the only person with two photographs among seven photographs; held that a display is not impermissibly suggestive where the police did not direct the witness's attention to any particular photograph). See also *Commonwealth v. Kostka,* 370 Mass. 516, 524 (1976); *Commonwealth v. Vasquez,* 11 Mass. App. Ct. 261 (1981). Compare *Commonwealth v. LaPierre,* 10 Mass. App. Ct.

641 (1980) (same picture in successive array). The defendant was not the only person with multiple photographs in the array. In two of the photographs, the defendant was shown with one Martone who had two other pictures among the eighteen photographs. Martone was not selected by the victim, even as a person who resembled one of the individuals who attacked her.

Further, the pretrial identification was reliable under the test enunciated in *Neil* v. *Biggers*, 409 U.S. 188 (1972), and restated in *Manson* v. *Brathwaite*, 432 U.S. 98 (1977). Under the reliability test, the factors to be considered are the opportunity the identifying witness had to view her assailant at the time of the crime, the degree of attentiveness of the witness, the accuracy of prior descriptions by the witness, the certainty which the witness displays at the time of the pretrial identification, and the length of time between the crime and the identification. *Manson* v. *Brathwaite*, 432 U.S. at 114. In order to evaluate those material factors, we consider the totality of the circumstances, i.e., the identifying witness's entire connection with the case. *Commonwealth* v. *Botelho, supra* at 867. Although the various factors under the Biggers-Manson test vary in importance according to the circumstances of the particular case (*Commonwealth* v. *Worlds*, 9 Mass. App. Ct. 162, 171 [1980]), the opportunity to observe at the time of the offense is ordinarily the most important factor. *Id. Commonwealth* v. *Moynihan*, 376 Mass. 468, 476 (1978). Here, the victim was in the defendant's presence for several hours and the motion judge so found. The victim had not misidentified anyone in the defendant's stead and she was not hesitant in selecting the defendant's photograph as the person who had first raped her on the afternoon of August 16. The time span between the crime and the photographic identification was two days, the same length of time deemed acceptable in *Manson* v. *Brathwaite*, 432 U.S. at 115-116. Therefore, we hold that the motion judge was correct in holding that the pretrial photographic identification was not unnecessarily suggestive and indeed

was reliable and therefore he was correct in denying the suppression motion as to this pretrial identification.

The pretrial identification that took place in the District Court prior to the probable cause hearing was not suppressed by the motion judge, but the Commonwealth, perhaps wisely, did not use it at trial or refer to it in any way. Assuming, without deciding, that the pretrial identification should have been suppressed we conclude that the Commonwealth has met its burden of showing by clear and convincing evidence that the in-court identification had a source independent of the suggestive identification at the District Court. *Commonwealth* v. *Botelho,* 369 Mass. at 868. The motion judge found that the victim had been in the defendant's presence for several hours on August 16, 1975, and had good reason to remember him. On the evidence, the defendant was the first person to rape her, and some short time after the rape, applied a knife to her and forced her to disrobe, and then joined other men in compelling her to run naked around a pool table for a length of time. We hold that the motion judge's finding that the in-court identification had a source independent of the pretrial identification in the District Court was correct.

Therefore the denial of the defendant's suppression motion and the admission in evidence of the in-court identification were not error.

*Judgments affirmed.*