Connolly, J.
Introduction
Defendant Anthony Pagano was indicted pursuant to G.L.c. 265, §17 for a masked, armed robbery against Karim Slaovi. Pagano allegedly stole $450.00 from Slaovi. Defendant moves to suppress and exclude evidence of the original out-of-court identification obtained as a result of an alleged tainted identification procedure conducted by the Somerville Police Department.
An evidentiary hearing was held on June 3, 1997 on defendant’s motion to suppress identification evidence. For the following reasons, defendant’s motion to suppress identification evidence is DENIED.
FINDINGS OF FACT
On September 9, 1996, defendant Anthony Pagano (“Pagano”) entered a gas station, the Petro Plus, at 206 Salem St. in Malden, Massachusetts. Pagano was masked and carrying a gun in hand when he entered the gas station and demanded that the cashier, Mr. Karim Slaovi (“Slaovi”), hand over the money. At that time, around 10:15 p.m., Slaovi was stocking shelves with cigarettes. Defendant put the gun to Slaovi’s stomach twice and told Slaovi three times to “hand over the money.” Slaovi called Pagano by the name “Eric" and Pagano said, “I’m not Eric.” When defendant went into a back room of the gas station Slaovi was able to push an alarm. Co-defendant Steven Plavetsky (“Plavetsky”) was acting as a lookout outside of the gas station. During the armed robbery Pagano stole $450.00 from Slaovi.
Detective Eugene Walsh (“Walsh”), a detective for seven years with the Malden Police Department, investigated the armed robbery. Walsh interviewed the victim on the date of the robbery, September 9, 1996. The victim described the assailant as a white male, with blond hair, and green or blue eyes and said he recognized the individual as a former customer at the gas station’s store.
On September 11, 1996 Walsh brought Slaovi to the Malden Police station. Slaovi identified the co-defendant, Plavetsky, by a photo identification. Pagano’s photograph was not in the identification book.[1] Slaovi described the suspect who had robbed him as a white male who carried a gun and was dressed in all black, including a black mask. Slaovi had seen Pagano in the gas station during a period of two or three months prior to the armed robbery. Slaovi recognized defendant Pagano as a neighbor and customer at the gas station. Defendant sometimes went into the gas station’s store up to three times a day and often bought Marlboro cigarettes at the gas station. Slaovi recognized defendant’s voice and eyes, which he described as blue or green. Slaovi described his assailant as a white male, 5 feet, 6 inches tall with blond hair, who always wore black clothes and was always together with the co-defendant.
The Commonwealth’s second witness, A1 Brito (“Brito"), was an employee at Petro Plus for over eight years. Brito was working at the gas station on September 19, 1996 when he saw the defendant crossing the street with a T-shirt over his head. Brito asked Slaovi whether that was the man who had robbed Slaovi on September 9th and Slaovi said he was not sure. Pagano was hiding his face with a T-shirt at the time. After looking at the suspect, Slaovi called the police.
Police responded to the report that Brito and Slaovi had seen Slaovi’s assailant walking past the gas station. Sergeant John Amerault (“Amerault”), a veteran with the Malden police for twelve years, proceeded to go with Brito and Slaovi in search of the suspect. Amerault was given a description of the suspect as a white male, with blond hair, who was wearing a white T-shirt and holding a black or blue T-shirt.
Sergeant Amerault found a blue T-shirt on the back porch of a nearby building. The defendant was found in the unfinished basement of the building hiding in back of a boiler. Defendant said that he was visiting his girl friend who lived on the second floor. At that time, Mr. Slaovi identified defendant as the person who had robbed him on September 9, 1996. Slaovi recognized defendant’s voice and eyes.
The issue is whether or not the victim’s one-on-one identification was constitutionally permissible and whether it was conducted too long after the robbery (ten days after) to be reliable.
RULINGS OF LAW
1. Police Identification Procedure
“[I]t is for the defendant to establish, apparently by a preponderance, that a given confrontation was unnecessarily suggestive.” Commonwealth v. Botelho, 369 Mass. 860, 867 (1976). “If the defendant sustains his burden, then, should the prosecution desire to offer identification testimony, it must assume the burden of establishing by ‘clear and convincing evidence’ that the proffered identification has a source independent of the suggestive confrontation.” Botelho, supra at 868. Factors to consider in determining whether a witness’s identification derives from an independent source include: (1) the witness’s oppor *2 tunity to view the perpetrator at the time of the crime; (2) the accuracy of any prior description given by the witness; (3) any prior mistaken identification or inability to identify the defendant; (4) any suggestions given to the witness regarding the identification of the defendant; (5) (perhaps) the level of certainty of the witness; and) 6) the lapse of time between the crime and the challenged identification. Commonwealth v. Holland, 410 Mass. 248, 256 (1991).
If defendant meets the burden of establishing by a preponderance of the evidence that the identification procedure was suggestive, then the burden shifts to the government to show by clear and convincing evidence that the identification’s reliability outweighs any suggestive taint. State v. Cefalo, 396 A.2d 233, 238-39 (Me. 1979). Reliability is a function of the following factors: (1) the opportunity of the witness to view the criminal at the scene of the crime; (2) the witness’s degree of attention; (3) the accuracy of any prior description; (4) the level of certainty of the witness; and (5) the time elapsed between the crime and the confrontation. Cefalo, supra at 114.
In evidentiary content, the independent source and reliability tests are identical. The difference lies in the ultimate admissibility of the challenged identification itself. Under the Botelho test, the suggestive confrontation is subject to per se exclusion. Under the Biggers-Braithwaite test, the suggestive confrontation may still be admissible if it can be shown to have been “reliable.” See Neil v. Biggers, 409 U.S. 188 (1972); Manson v. Braithwaite, 432 U.S. 98 (1977).
The witness’s opportunity to observe the perpetrator at the time of the crime is the factor deserving the greatest weight. See Commonwealth v. Bowie, 25 Mass.App.Ct. 70, 76 (1987). However the duration of the opportunity to view a suspect goes to the weight of the witness’s identification and not its admissibility. Commonwealth v. Roberts, 362 Mass. 357, 367 (1972) (witness viewed assailant for two or three seconds). The degree to which the witness’s attention was focused on the suspect may be a factor enhancing the credibility of the witness’s identification. See Commonwealth v. Riley, 26 Mass.App.Ct. 550, 554 (1988) (“[T]he terrifying circumstances of the assault were likely to fix [the victim’s] attention on the assailant and imprint his features in her mind”).
Identification resembling a one-on-one confrontation although not subject to a per se rule of exclusion, are disfavored as suggestive. Commonwealth v. Colon-Cruz, 408 Mass. 533, 542 (1990). “Although such confrontations pose particularly serious dangers of suggestiveness, we would consider it ill advised to exclude as constitutionally unacceptable all evidence that has been derived from single person confrontations simply because these identification procedures might have taken place just as easily in the form of lineups.” Commonwealth v. Santos, 402 Mass. 775, 781 (1988), quoting Commonwealth v. Storey, 378 Mass. 312, 317 (1979), cert. denied, 446 U.S. 955 (1980). “Our test is simply whether, in light of the ‘totality of the circumstances,’ the identification procedure was unnecessarily suggestive of the defendant.” Santos, supra at 781.
In the present case, defendant has not met his burden of proving by a preponderance of the evidence that the one-on-one identification by the victim was unnecessarily suggestive and conducive to irreparable mistaken identification. Mr. Slaovi identified defendant Pagano as the man who stood right next to him during the robbery and who twice held a gun to Mr. Slaovi’s stomach and told him to “hand over the money” three times.
On September 9, 1996, right after the armed robbery occurred, Mr. Slaovi gave Detective Walsh a description of defendant as a white male, dressed in all black, with a black mask on, and carrying a gun. Slaovi described the suspect as having green or blue eyes and blond hair. Slaovi informed police that he recognized the suspect’s voice since Slaovi heard defendant speak several times while he was robbing Slaovi. Mr. Slaovi realized defendant had been a frequent customer at the gas station who had regularly come into the store to purchase hot dogs and cigarettes for 2 or 3 months before the robbery.
On September 19, 1996 Sergeant Amerault responded to a report that came in from Mr. Slaovi and another employee at Petro Plus, Mr. A1 Brito (“Brito”). Brito recognized Mr. Slaovi’s assailant as a person who hung around the gas station.
This court finds Slaovi’s identification of the suspect to be reliable since Mr. Slaovi could see defendant’s eyes and hear defendant’s voice during the robbery enough to recognize defendant as a neighbor and regular customer at the gas station. Slaovi recognized defendant as a customer who would sometimes come into the store up to three times a day. Based on a totality of the circumstances, it is credible that Slaovi recognized the suspect’s voice, eyes, hair color, and build, even though defendant wore a mask at the time of the robbery. All of these characteristics would be discernible, even during a masked robbery.
It is credible that Brito recognized defendant as the possible suspect when Brito spotted defendant crossing the street near the gas station on September 19th since Brito had spoken with Slaovi about the person who robbed him. Even though defendant had a T-shirt hiding his face at the time, defendant had the same build, height and way of walking as the suspect described by Slaovi. Further, Mr. Slaovi was at the gas station when Brito saw defendant and Slaovi was able to look at defendant as he crossed the street and confirm that defendant had the same build, height and way of walking as the man who had robbed him.
Sergeant Amerault answered the call from Mr. Slaovi when he telephoned police to report that he saw a man fitting a description of the person who robbed *3 him. Amerault went with Slaovi and Brito to search for the suspect. Amerault discovered a blue T-shirt on the back porch of a building near the gas station. Defendant had been holding a black or blue T-shirt when Brito and Slaovi observed him walking across the street from the gas station. Amerault found defendant in the unfinished basement of the building, hiding in back of a boiler. Amerault asked defendant what he was doing and defendant responded that he was visiting his girlfriend who lived on the second floor. At that time, Mr. Slaovi recognized defendant’s voice, eyes, hair, and build and identified him as his assailant to Sergeant Amerault.
2. Time elapsed
The length of the interval between the crime and the opportunity to make an identification is a factor bearing on the accuracy of a witness’s identification. See Commonwealth v. Crowe, 21 Mass.App.Ct. 456, 468 (1986) (eighteen days); Commonwealth v. Riley, 26 Mass.App.Ct. 550, 554 (1988) (one month).
In the present case, there was a 10 day interval between the date of the armed robbeiy and the victim’s identification of defendant. However, Slaovi never identified anyone other than the defendant as the person who assaulted and robbed him at gun-point and Slaovi’s description of defendant fit Pagano’s description.
3. Reliability test
“[T]he Commonwealth is entitled to put in evidence otherwise admissible identifications that, despite improper suggestiveness, satisfy the reliability test.” Commonwealth v. Hicks, 17 Mass.App.Ct. 574, 578 (1984). “For constitutional purposes, . . . the significant question is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification.” Hicks, supra at 583.
In the present case, the victim described his assailant to police on the date of the armed robbery and the description fit the defendant. Mr. Slaovi’s exposure to defendant was considerable since defendant stood right next to Slaovi and put a gun to Slaovi’s stomach two times during the robbeiy. Further, Slaovi heard his assailant’s voice during the robbeiy when he told Slaovi to give him the money, three times. Further, another employee at Petro Plus, Mr. Brito, recognized Pagano from Slaovi’s description and recognized him as a person who hung around the gas station.
It is conceivable that ten days after the armed robbery, Mr. Brito recognized defendant as the suspect when he observed defendant crossing the street. Brito alerted Slaovi who saw defendant crossing-the street. Even though defendant had a T-shirt over his head, Slaovi recognized defendant by his build, height, and the way he walked. As a result, Slaovi proceeded to call for police.
Considering the strong showing of reliability, based on Slaovi’s description of defendant, a jury should be permitted to assess the accuracy of the victim’s identification of defendant. See Hicks, supra at 584.
ORDER
For the foregoing reasons, it is therefore ORDERED that defendant Anthony Pagano’s Motion to suppress identification is DENIED.

 Pagano had been arrested as ajuvenile and the policy at the time precluded photographs of juveniles.