COMMONWEALTH vs. JOHNNY STEPHENS (and a companion case[1]). No. 94-P-2064. May 7, 1998. *Practice, Criminal,* Assistance of counsel, Severance, Trial of defendants together. *Constitutional Law,* Assistance of counsel. *Evidence,* Medical record, Relevancy and materiality, Privileged communication, Joint enterprise. *Privileged Communication. Joint Enterprise.*

The defendants, Johnny Stephens and Kevin Walker, have appealed from their convictions, by a Superior Court jury, for unarmed robbery, a lesser included offense of armed robbery (G. L. c. 265, § 17), and assault and battery by means of a dangerous weapon, to wit: a shod foot (G. L. c. 265, § 15A[b]), and from the denial of their new trial motions. Each defendant raises numerous issues on appeal. We affirm.

Taken in the light most favorable to the Commonwealth, the jury could have found the following facts. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). On the evening of October 22, 1992, Eleanor Washington was approached by Johnny Stephens and Kevin Walker in the Orchard Park housing project. Walker asked, "What's up," and tried to grab her purse. Stephens stood in front of her and demanded, "Bitch, where's your money at?" Washington handed over forty-two dollars, but Stephens demanded more. He then put a gun to her head as Walker stood by.[2] Stephens subsequently hit and punched Washington. When she tried to flee, Walker blocked her way. Stephens continued to beat Washington in the head and face, and when she fell to the ground, he kicked her in the face, head and back with his heavy

---

Slocums' action but would not provide the basis for an indemnity claim. *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. at 41.

[1]Commonwealth vs. Kevin Walker.

[2]Both defendants were charged with armed robbery, but convicted only of the lesser included offense of unarmed robbery.

boots. Walker stood beside Washington while Stephens continued to kick her.[3] Washington eventually lost consciousness. Later that same night, she staggered into the Area B-2 police station, covered with blood. She reported that she had been attacked, beaten, and robbed, and described one of her assailants as a black man, approximately forty years old, known to her as "Johnny." The following day, Washington again described "Johnny," and also stated that the second individual involved in the robbery was named "Kevin," whom she also described. She subsequently provided police with her assailants' full names, and identified their pictures from mug books. At trial, Washington identified Stephens and Walker as her assailants, stating that she had "no doubt" that they were the men who had attacked her.

1. *Ineffective assistance of trial counsel.* Both defendants filed new trial motions, in which they claimed to have been deprived of the effective assistance of counsel, and which were denied. In order to establish the ineffectiveness of trial counsel, a defendant must show not only that the conduct about which he complains fell "measurably below that which might be expected from an ordinary, fallible lawyer," but also that as a result, he was "likely deprived . . . of an otherwise available, substantial ground of defence." *Commonwealth v. Saferian,* 366 Mass. 89, 96 (1974). Neither defendant has made such a showing.

(a) *Stephens's claim.* During his cross-examination of Eleanor Washington, Stephens's counsel used prior inconsistent statements made to Detective Martin, the grand jury, and Gerard Belleveau, a private investigator employed by the defense, to impeach her credibility. He also elicited from Washington that she had consumed alcohol on the night in question. The next morning, counsel moved to reopen his cross-examination of Washington, claiming to have forgotten to impeach her further by using past convictions and pending criminal charges. The judge denied the motion, but indicated that counsel could call Washington as a witness in his own case.[4] Stephens maintains that his counsel's error constituted ineffective assistance of counsel. He also claims that the judge's refusal to allow him to reopen his cross-examination was reversible error.

Stephens's counsel testified during the hearing on his motion for a new trial that his omission was inadvertent and not a strategic decision. He explained that he fully intended to use Washington's prior convictions for impeachment purposes, but simply forgot. Moreover, at the hearing, a former judge of the Boston Municipal Court testified that in her opinion, counsel's performance was ineffective. Assuming, without deciding, that counsel's conduct fell measurably below that of an ordinary, fallible lawyer, Stephens has nevertheless failed to demonstrate that better work would have made a difference in the jury's decision. See *Commonwealth v. Satterfield,* 373 Mass. 109, 115 (1977). The "failure to impeach a witness does not [generally] prejudice the defendant [to such a degree as to] constitute ineffective assistance" of counsel. *Commonwealth v. Bart B.,* 424 Mass. 911, 916 (1997), and cases cited. Moreover, here, Washington was thoroughly cross-examined using her prior

---

[3]At trial, Washington was uncertain whether Walker actually participated in the beating.

[4]Stephens's lawyer did not call Washington in his case in chief. While he could have raised Washington's pending charges if he had chosen to call her as part of his own case, he could not have impeached her with prior convictions.

inconsistent statements, and she admitted having consumed alcohol on the night of the alleged attack. Notwithstanding counsel's failure to use Washington's criminal history to cast doubt upon her credibility, his cross-examination was apparently quite effective, as evidenced by the jury's decision to acquit both defendants of armed robbery, in spite of Washington's claim that a gun was used in the attack.[5] As for counsel's decision not to recall Washington in his own case, because there is nothing in the record to indicate that Washington had entered into an agreement with the prosecutor, or had been promised leniency in exchange for her testimony, we "cannot say that counsel's failure to attempt to [use pending charges to] show bias was 'manifestly unreasonable.' " *Commonwealth* v. *Roberts*, 423 Mass. 17, 21 (1996) (citation omitted).

Stephens also maintains that the judge's refusal to allow counsel to reopen his cross-examination of Washington warrants reversal of his convictions. The decision whether to allow defense counsel to reopen a cross-examination is a matter within the sound discretion of the trial judge. *Commonwealth* v. *Peterson*, 7 Mass. App. Ct. 855, 856 (1979). While the better practice would have been to allow counsel to reopen his cross-examination, where, as here, counsel had the opportunity to use Washington's prior convictions and failed to do so, yet otherwise did an effective job of impeaching her credibility, there was no "duty on the part of the judge to [permit counsel to] recall [her] after she had left the witness stand and . . . departed the courtroom." *Commonwealth* v. *Horton*, 376 Mass. 380, 400 (1978), cert. denied sub nom. *Wideman* v. *Massachusetts*, 440 U.S. 923 (1979).

(b) *Walker's claim.* Walker claims that his counsel, too, was ineffective (1) for failing to interview Washington's boyfriend as a potential alibi witness, who was allegedly willing to testify that Washington was with him at the time she claimed to have been robbed and beaten; (2) for failing to move to suppress Washington's photographic identification of him; and (3) for failing to inform him of his right to testify in his own defense. On a claim of failure to prepare and conduct an adequate defense, "the defendant [can] make no headway in the absence of a showing that the fault probably resulted in forfeiture of a substantial defence." *Commonwealth* v. *Saferian*, 366 Mass. at 98. Walker maintains that if his counsel had interviewed Washington, he would have been better able to impeach her with inconsistent statements, yet he fails to suggest which of those statements might have been used or how they could have been used. Furthermore, while Stephens's counsel did impeach Washington with several inconsistent statements, Walker's lawyer focused his defense on minimizing Walker's involvement in the attack. In this regard, he called Walker's previous attorney, John Conwell, who testified that Washington and Walker maintained a friendship even after the alleged attack, and who also stated that Washington told him that Walker "didn't do anything anyway." While this strategy obviously was not successful, we cannot say it was manifestly unreasonable. See *Commonwealth* v. *White*, 409 Mass. 266, 272 (1991) (reviewing court should "avoid characterizing as unreasonable a defense that was merely unsuccessful").

Walker's claim that counsel's failure to interview Washington's boyfriend and another individual Walker claims would have provided an alibi, is also without merit. Although Walker asserted in an affidavit submitted in support

---

[5] The victim did not initially mention a gun, but later "remembered" having seen one.

of his new trial motion that he told his lawyer about these potential witnesses, he failed to secure affidavits from either individual "to support his claim [that they were, indeed, willing to testify, or that] trial counsel made no attempt to contact them." *Commonwealth* v. *Gill*, 37 Mass. App. Ct. 457, 465 (1994). See *Commonwealth* v. *Colantoni*, 396 Mass. 672, 682 (1986) (motion judge need not believe defendant's self-serving affidavit).[6]

Walker next challenges his attorney's failure to move to suppress a photographic identification of him made by Washington as "unduly suggestive." This claim, too, must fail. Walker bears the burden of proving any facts he asserts which are "neither agreed upon nor apparent from the face of the [trial] record." *Commonwealth* v. *Freeman*, 29 Mass. App. Ct. 635, 641 (1990), quoting from *Commonwealth* v. *Bertrand*, 385 Mass. 356, 364 (1982). He has produced no evidence to support his claim that the array was suggestive. Indeed, the array is not even part of the record on appeal. Walker's claim that his lawyer made the decision not to put him on the stand without informing him of his constitutional right to testify in his own behalf is similarly unavailing. Prior to trial, Walker's counsel filed a motion in limine seeking to exclude his numerous prior convictions. The motion was denied. The filing of such a motion is "consistent with [Walker's] making an intelligent decision not to testify because of the potentially detrimental effect of his extensive criminal record." *Commonwealth* v. *Siciliano*, 19 Mass. App. Ct. 918, 920 (1984). Moreover, the judge expressly informed Walker of his constitutional right to testify at trial, and Walker "made no protest . . . calculated to express his desire to" do so. *Ibid.*

2. *Additional claims of error asserted by Stephens.*

*Motions to compel production of medical records.* Prior to trial, Stephens filed a *Bishop* motion for judicial determination of the relevance of Eleanor Washington's psychiatric records from Carney Hospital. See *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993). The judge allowed the motion and after reviewing the records in camera, ruled that they contained "no information relevant to the case." A subsequent motion for reconsideration was denied. On appeal, both Stephens and the Commonwealth have asked us to review the records de novo, and, after doing so, we conclude that the judge's ruling was correct.

Approximately one month after the aforementioned *Bishop* motion was filed, Stephens filed three additional motions, seeking the production of records from (1) Brewster Ambulance Service, (2) Beth Israel Hospital, and (3) the STAIR Drug Rehabilitation Program. The judge treated the motions as *Bishop* motions and denied them as untimely, and, in the alternative, as irrelevant.

Stephens first claims that the judge mistakenly construed the motions as *Bishop* motions, rather than as simple motions to compel the production of potentially relevant medical records that might tend to establish Washington's history of drug addiction. With the exception of the motion seeking records from Brewster Ambulance Service, this argument is disingenuous. Indeed, the motions concerning Beth Israel Hospital and the STAIR program expressly

---

[6]We note that Walker raised the alibi issue for the first time on appeal, and that it is inconsistent with his theory at trial that although he was present at the scene, he was not involved in the crime.

indicated that they were being filed pursuant to *Commonwealth* v. *Bishop*, and requested psychiatric and counseling records. Pursuant to Mass.R.Crim.P. 13(d)(2)(A), 378 Mass. 873 (1979), such motions "shall be filed within seven days after the date set for the filing of the pretrial conference·report[, here, April 21, 1993,] or at such other time as the judge . . . may allow." See *Pare* v. *Commonwealth*, 420 Mass. 216, 218 (1995) ("Nothing we said in *Commonwealth* v. *Bishop* . . . makes [rule 13] inapplicable" to motions filed pursuant to that case). The motions at issue here were filed on October 21, 1993, the day the case was scheduled for trial, six months after the pretrial conference report was filed, and more than thirty days after the motion seeking records from Carney Hospital. Thus, the judge correctly denied them as untimely. Moreover, the procedure for producing, inspecting, and ruling on potentially privileged records set out in *Bishop* is simply too time consuming to begin on the first day of trial. See 416 Mass. at 181-183 (describing four-stage process which must be completed prior to trial).

The motion seeking records from Brewster Ambulance Service sought nothing more than "records pertaining to the emergency medical response . . . and transportation of Eleanor Washington," and was, therefore, improperly construed as a *Bishop* motion. Nevertheless, it, too, was untimely. Mass.R-.Crim.P. 13(d)(2)(A). *Commonwealth* v. *Jackson*, 419 Mass. 716, 728 & n.12 (1995). While rule 13 provides that a judge may entertain an untimely motion "at any time before trial" for good cause, here, Stephens provided no justification for his delay. Moreover, the date of the response referred to in the motion was May 12, 1993, almost seven months after the alleged attack. While "[e]vidence of a witness's use of illegal drugs . . . or alcohol at the time of the events concerning which she was testifying, or evidence of a pattern of such drug or alcohol addiction, if it would impair the witness's ability to perceive and to remember correctly, is admissible on cross-examination to attack the witness's credibility . . . [, i]t is the burden of the proponent of [such] evidence to show that the judge abused his discretion in excluding" the evidence. *Commonwealth* v. *Carrion*, 407 Mass. 263, 273-274 (1990) (citations omitted). Here, we see no "apparent connection between [Washington's] possible use of drugs on [May 12, 1993,] and [her] ability to perceive, remember or testify to the events" that occurred on the night of October 22, 1992. *Id.* at 274. Accordingly, there was no abuse of discretion.

3. *Additional claims of error asserted by Walker.*

(a) *Walker's motion to sever.* Walker moved for severance before trial, on the ground that he and Stephens would be offering "conflicting, antagonistic, and irreconcilable defenses." He maintains on appeal that the judge's denial of his motion was error. Severance lies within the sound discretion of the trial judge. *Commonwealth* v. *Clarke*, 418 Mass. 207, 217 (1994). Ordinarily, individuals "properly indicted together should be tried together." *Commonwealth* v. *Dickerson*, 17 Mass. App. Ct. 960 (1983), quoting from *United States* v. *Avarello*, 592 F.2d 1339, 1345 (5th Cir.), cert. denied, 444 U.S. 844 (1979). A defendant is entitled to severance only where his defense and that of a codefendant are "antagonistic to the point of being mutually exclusive," *Dickerson, supra* at 960, or where "the prejudice resulting from a joint trial is so compelling that it prevents [the] defendant from obtaining a fair trial." *Dickerson, supra* at 960, quoting from *Commonwealth* v. *Moran*, 387 Mass. 644, 655-658 (1982). Such was not the case here. At trial, Stephens chal-

lenged Washington's identification of him as her assailant by impeaching her credibility with prior inconsistent statements and suggesting that her ability to perceive on the night of the alleged attack was impaired due to her consumption of alcohol. Walker's strategy, on the other hand, was to admit being at the scene, but deny any actual involvement in the crime. Neither defendant made statements implicating the other, and neither's defense contradicted the other's version of events. Accordingly, there was no abuse of discretion.

(b) *Sufficiency of the evidence.* Walker next challenges the sufficiency of the evidence presented at trial. The Commonwealth proceeded against Walker on a theory of joint venture. Walker maintains not only that the judge improperly denied his motions for required findings of not guilty, filed at the close of the Commonwealth's case and again at the close of the evidence, but also that the instruction on joint venture was erroneous. Under the theory of joint venture applicable in this case, the Commonwealth had to prove that Walker was "(1) present at the scene of the crime, (2) with knowledge that [Stephens] intend[ed] to commit the crime, or with intent to commit [the] crime, and (3) by agreement, [was] willing and available to help . . . if necessary." *Commonwealth* v. *Ortiz,* 424 Mass. 853, 856 (1997), quoting from *Commonwealth* v. *Longo,* 402 Mass. 482, 486 (1988). Although mere presence at the scene of the crime is insufficient to support a conviction as a joint venturer, "if one is, by agreement, in a position to render aid he is an abettor even if he does not participate in the actual perpetration of the crime because his presence may encourage the perpetrator by giving him hope of immediate assistance." *Commonwealth* v. *Costa,* 407 Mass. 216, 225 (1990). Here, the evidence viewed in the proper light was sufficient to establish that Walker approached Washington and attempted to grab her purse before Stephens ever spoke to her, that he stood by while Stephens beat her, that he subsequently blocked her path when she attempted to flee, and finally, that he stood next to her as she lay on the ground and was repeatedly kicked by Stephens. From these facts the jury could reasonably have inferred that Walker was present at the crime, that he shared Stephens's intent not only to rob Washington, but also to commit an assault and battery by means of a dangerous weapon upon her, and that he was willing to and actually did help when it became necessary. Nothing more was required. Because a judge may give an instruction that is supported by the evidence, *Commonwealth* v. *Clemente,* 25 Mass. App. Ct. 229, 238 (1988), the challenged instruction was also proper.[7]

(c) *Right to appointed counsel on appeal.* Walker's last claim of error concerns the denial of his motion for replacement counsel to represent him in this appeal after his appointed counsel sought, and was granted permission, to withdraw at Walker's insistence. He claims that this denial deprived him of the right to appointed counsel. An "indigent's right to appointed counsel[, however,] does not include the right to dictate who shall be appointed." *Commonwealth* v. *Babb,* 416 Mass. 732, 735 (1994). Moreover, a defendant's refusal to proceed with appointed counsel without good cause constitutes "abandonment," after which he is not entitled to the appointment of new

---

[7]Walker also maintains that counsel's failure to object to the instruction amounted to ineffective assistance. Because we conclude that the instruction was proper, we do not address this claim.

counsel. *Ibid.* Because Walker has advanced no legitimate reason for dismissing his appointed counsel, his rights were not offended.[8]

*Judgments affirmed.*

*John Salsberg* for Johnny Stephens.

*Nancy L. Hathaway,* Assistant District Attorney, for the Commonwealth.

*Kevin Walker,* pro se, submitted a brief.

---

[8]Walker also contends that the cumulative effect of the alleged errors at trial was to create a miscarriage of justice. Because we conclude that none of Walker's claims of error is supported in the record, his argument necessarily fails.